PEOPLE v OTTO

Docket No. 78-5021. Submitted May 14, 1979, at Detroit.—Decided July 23, 1979.

Defendant Daniel Otto and a companion were hitchhiking on a freeway when they were stopped by a police officer. In lieu of issuing a citation for hitchhiking, the officer decided to transport the hitchhikers from the freeway. The officer called in a file check to determine if there were any outstanding warrants. There were no warrants outstanding for the defendant but there was an outstanding traffic warrant for his companion. After the file check, and prior to placing the offenders in the patrol car, the officer conducted a pat-down search of both individuals. During the pat-down the officer felt a hard bulge under the defendant's coat which a further search revealed to be a pistol. The defendant was then arrested and charged with carrying a concealed weapon.

At the defendant's preliminary examination, defense counsel moved to dismiss but the defendant was bound over. In Detroit Recorder's Court, the defendant moved to suppress the gun as evidence, and in the alternative, for an evidentiary hearing. The Recorder's Court, Thomas L. Poindexter, J., denied the motion to suppress, but granted an evidentiary hearing, limited to taking the testimony of the defendant only. The defendant appeals, by leave granted, from the denial of the motion to suppress. *Held:*

1. The initial stop of the defendant was proper as he and his companion were violating a state statute.

2. The police officer's decision to transport the defendant and his companion to the next exit was a reasonable one under the circumstances.

3. The pat-down search of the offenders was reasonable under the circumstances as a means of protecting the officer.

4. The trial court correctly ruled that the evidence should not be suppressed.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 35, 37-59.

[2] 68 Am Jur 2d, Searches and Seizures §§ 2-6.

[3] 68 Am Jur 2d, Searches and Seizures § 58.

1. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — WARRANT REQUIREMENT.

> A search and seizure without a warrant is unreasonable per se and violates the state and Federal constitutions, unless the prosecution satisfies its burden of showing that the search is within one of the recognized exceptions to the warrant requirement (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — REASONABLENESS.

> The touchstone of an analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security"; the reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.

3. SEARCHES AND SEIZURES — HITCHHIKERS — FREEWAYS — PAT-DOWN SEARCH — SAFETY OF POLICE OFFICER.

> A police officer has no authority to arrest a person hitchhiking on a limited-access freeway, but may only issue to the hitchhiker a citation or transport the hitchhiker from the freeway; therefore, once a police officer decides to remove a hitchhiker from a freeway by transporting him in the officer's car to the next exit so that an occurring offense will not continue by the presence of the hitchhiker on the freeway, the police officer is justified in conducting a pat-down search of the hitchhiker for the officer's own safety and any weapons found in such a search should not be suppressed as evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

Legal Aid and Defender Association of Detroit (by *Craig A. Daly),* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and ALLEN and

K. B. Glaser,* JJ.

Allen, J. Where an officer stops a hitchhiker on the freeway in violation of MCL 257.679a; MSA 9.2379(1) and, in lieu of issuing a citation under MCL 257.728; MSA 9.2428, intends to transport the hitchhiker in the officer's patrol car off the freeway so that he can continue to hitchhike legally, can the officer conduct a pat-down search for weapons prior to having the hitchhiker enter the patrol car in the absence of any showing of specific and articulable facts that the hitchhiker is armed and dangerous? On this question of first impression, the trial court answered in the affirmative, and defendant appeals by leave granted.

At approximately 11:15 a.m., on October 1, 1978, Trooper Charles D. McCord was patroling northbound Interstate 75 near Six Mile Road when he observed the defendant and a female companion hitchhiking on the freeway. Trooper McCord stopped and asked if they had a vehicle breakdown. He then gave defendant and his companion a verbal warning that they were in violation of MCL 257.679a; MSA 9.2379(1),[1] when defendant responded that he and his companion were just trying to make it to Eight Mile Road, just a couple of miles north of where they were. Trooper McCord obtained identification from both parties and called in a file check to determine if there were any outstanding warrants. No warrant was outstanding for defendant but there was an outstand-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 257.679a; MSA 9.2379(1) provides that, "A person shall not operate a motorcycle with less than 125 cubic centimeter engine, moped, farm tractor, or other self-propelled farm implement, *nor shall any pedestrian,* bicycle, except as herein provided, or other nonmotorized traffic *be permitted on any limited access highway* in this state." (Emphasis added.) Limited access highway is defined in MCL 252.51; MSA 9.1094(1) to include freeways.

ing traffic warrant for his companion. Trooper
McCord then told the parties he would transport
both of them off the expressway, taking them to
Eight Mile Road in his patrol car. Neither party
was placed under arrest. Before putting defendant
in the patrol car, McCord conducted a pat-down
search of defendant. During the pat-down he felt a
hard bulge on the left side of defendant's black
leather jacket.

"As I was frisking him he had a black leather jacket
on with a hard bulge right over his breast, on the left
side, and at that time I felt on the outside pocket and I
—then I went on the inside of his coat. On the inside of
his jacket there was a pocket and at that time I re-
moved a .25 caliber Gallesi automatic pistol with one
round in the magazine."

McCord admitted on cross-examination that he
had to go inside defendant's jacket to remove the
gun.

At the preliminary examination, defense counsel
moved to dismiss but defendant was bound over on
the charge of carrying a concealed weapon con-
trary to MCL 750.227; MSA 28.424. On November
17, 1978, defendant moved in Detroit Recorder's
Court to suppress the evidence and, in the alterna-
tive, for an evidentiary hearing. The motion to
suppress was denied but an evidentiary hearing
was granted, limited to taking the testimony of the
defendant only. At the evidentiary hearing the
defendant testified substantially as he did at the
preliminary examination.

Defendant concedes that the original "stop" was
legal and proper because at that time he was
violating a state statute, but argues that the "stop
and frisk" exception under *Terry v Ohio,* 392 US
1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), cannot

justify a warrantless search where there are no specific and articulable facts from which the officer could reasonably conclude that the defendant was armed and dangerous. As was stated in *Terry,* at 30:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot *and that the persons with whom he is dealing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (Emphasis supplied.)

Defendant strengthens this argument by pointing out that under settled law warrantless searches are *per se* unreasonable, subject only to a few specifically and well established exceptions of which only the *Terry* exception could possibly apply in the case before us. *People v Harold Williams,* 63 Mich App 398; 234 NW2d 541 (1975).

"A warrantless search and seizure *is unreasonable per se* and violates the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution unless the prosecution satisfies its burden that the search is within one of the recognized exceptions to the warrant requirement. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975)." 63 Mich App at 401. (Emphasis supplied.)

The file check had shown defendant clean and his companion subject only to a routine traffic viola-

tion. Thus, unless it is reasonable to assume that all hitchhikers are armed and dangerous—an assumption we decline to make—nothing in the instant case suggested defendant was either dangerous or armed. Ergo, defendant argues, the *Terry* exception does not apply.

Plaintiff answers by arguing that defendant construes the law too narrowly as is evidenced by the fact that the United States Supreme Court, in a subsequent case, *Pennsylvania v Mimms,* 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977), broadened the *Terry* holding where the frisk was reasonable under the circumstances in which it was made. In that case, two officers on routine patrol stopped defendant Mimms when they observed him driving with an expired license. One of the officers asked Mimms to step out of the car and produce his driver's license. When Mimms did so, the officers noticed a large bulge under his jacket whereupon defendant was frisked and a loaded revolver found on his person. The Pennsylvania Supreme Court held the warrantless search illegal on the identical grounds urged here, *viz:* that the officer's order to get out of the car was impermissible because there were no " 'objective observable facts to support a suspicion that criminal activity was afoot or that the occupant of the vehicle posed a threat to public safety' ", *Mimms,* 434 US at 108, and, since it was this order which led to the observance of the bulge under defendant's jacket, the revolver was the fruit of an unconstitutional search. That conclusion was rejected, the Supreme Court saying:

"We do not agree with this conclusion. The touchstone of our analysis under the Fourth Amendment is always *'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's per-*

sonal security.' *Terry v Ohio,* 392 US 1, 19 [88 S Ct 1868; 20 L Ed 2d 889] (1968). Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' *United States v Brignoni-Ponce,* 422 US 873, 878 [95 S Ct 2574; 45 L Ed 2d 607] (1975).

"In this case, unlike *Terry v Ohio,* there is no question about the propriety of the initial restrictions on respondent's freedom of movement. Respondent was driving an automobile with expired license tags in violation of the Pennsylvania Motor Vehicle Code. *Deferring for a moment the legality of the 'frisk' once the bulge had been observed, we need presently deal only with the narrow question of whether the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment."* 434 US at 108-109. (Emphasis supplied.) (Footnotes omitted.)

Recently our Court quoted with approval the paragraph from *Mimms* cited above and, in doing so, concluded that "[u]nder the circumstances the only 'sensible thing' for the police officer to do was to see if the purse contained a weapon". *People v White,* 84 Mich App 351, 354; 269 NW2d 598 (1978).

In the instant case it was the officer's decision to transport the defendant to the next exit and thereby take him off the freeway, which led to the pat-down. Employing the rationale of *Mimms* and *White* we inquire whether the officer's decision was reasonable under the circumstances. We find that it was. Trooper McCord had no authority to arrest the defendant and could have only issued a citation.[2] This being so, the trooper's decision was

---

[2] MCL 257.728; MSA 9:2428 provides that where a violation occurs the officer may issue a citation and release the offender, unless the person is charged with driving under the influence, reckless driving, driving without a permit, or negligent homicide.

limited to issuing a citation or to transporting the offenders off the freeway to the next exit. We believe the officer wisely chose the latter course of action; for had a citation been issued, the hitchhikers would continue on the freeway in violation of the law. As such, defendant and his female companion could either be the prey of individuals who rob and assault individuals stranded or walking along the highway or could themselves be suspect of criminal conduct on the highway. Recently, several instances of suspected foul play by hitchhikers or pedestrians on the interstate highways have received wide attention.

Having concluded that the decision to personally transport defendant and his companion off the highway was not in itself an illegal seizure, we have no trouble in sustaining the subsequent patdown as being reasonable under the circumstances. The alternate to the frisk would be to handcuff defendant but that in itself would be a greater intrusion than a pat-down. Frisks, when made for the officer's own protection, are justified under both *Terry* and *Mimms.* As the *Terry* court noted:

"Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives." 392 US at 23-24.

In *Mimms,* the Supreme Court noted that a significant number of killings of police officers occurred in connection with traffic stops. While the instant

case is not the usual traffic stop where the officer on foot approaches the stopped vehicle, it is obvious that an officer whose hands are on the wheel of his own vehicle is an easy victim of an armed passenger sitting behind him.

We are aware of *People v Scott,* 16 Cal 3d 242; 128 Cal Rptr 39; 546 P2d 327 (1976), where the defendant and his young son, while near an exit ramp on a freeway, were stopped by police officers. The defendant appeared to be intoxicated and had no identification. He told the officers he was trying to get his son to his ex-wife in San Francisco. Out of apparent compassion and concern the officers offered to drive the two to San Francisco. No arrest was made, although one could have been made. Before permitting the defendant into the patrol car, an officer frisked defendant and discovered a bag of marijuana which the California Supreme Court found to be illegally obtained. In doing so it emphasized the totally discretionary action of the officers. The California court also noted that the defendant could have been arrested and then searched, but was never arrested.

In the instant case the options of the officer were more circumscribed by the situation. The defendant could not have been arrested, and yet it was not unreasonable to assist defendant in leaving the expressway. Looking at "all the circumstances of the particular governmental invasion of [defendant's] personal security" (434 US at 109), we conclude that the frisk of defendant was reasonable.

The flaw in defendant's position is that, here, an offense was occurring *and would continue to occur* unless the offender was taken off the freeway. In this respect the case for the people is stronger

than in *Terry* where there was only the suspicion that something wrong might occur. It is for this reason that we reject defendant's claim that if this Court affirms, a new legal standard would be created covering countless situations where an officer places a citizen in his vehicle.[3] In none of the situations is there an ongoing offense, much less an offense which will continue once the officer leaves. Further, Trooper McCord first inquired whether defendant had sustained a vehicle break-down and it was not until he was informed that defendant and his companion were hitchhiking that he asked them to enter the police car. An armed officer sitting in a parked patrol car taking information from a stranded or injured motorist is in an entirely different situation than the same officer when driving his car in traffic on the free-way. Our opinion is limited to only the instant situation where, if the officer merely issues a warning or citation and departs, he could be leav-ing the offender or others in danger. In such a situation it makes sense to remove the danger, and the resulting limited intrusion on the individual's privacy is overcome by the public interest of pro-tecting human life.[4]

Affirmed.

---

[3] Defendant gives the following illustrations: persons running out of gas and walking towards the nearest gas station; persons involved in an auto accident and who are asked to sit in the police vehicle while the officer obtains information; persons injured in an auto accident; neighborhood disturbances where the police decide to transport the apparent victim from the scene for his own protection.

[4] While we do not rely on it as a reason for affirming, we do note that as stated in *Terry,* "since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of *discouraging lawless police con-duct".* 392 US at 12. In the instant case Trooper McCord's conduct could hardly be termed lawless or offensive; rather, the officer was befriending the offenders. The purpose of the exclusionary rule hardly supports the suppression of evidence in the instant case.