502 A.2d 1332

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Harold A. REHMEYER.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1985.

Filed Dec. 20, 1985.

Thomas L. Kearney, Assistant District Attorney, York, for Com., appellant.

Gerald E. Ruth, York, for appellee.

Before WICKERSHAM, CIRILLO, and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of York County granting a motion to suppress evidence in favor of appellee, Harold Rehmeyer. We reverse.

At approximately 2:00 a.m., on November 19, 1983, Officer Perelman of the York City Police witnessed appellee, Harold Rehmeyer, drive through a red light. Perelman stopped appellee and detected the odor of alcohol on appellee's breath. Perelman had probable cause to believe that Rehmeyer was driving a vehicle while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(1).[1] However, because the officer believed the case was borderline, Perelman decided not to arrest Rehmeyer.[2] Instead, the officer suggested that Rehmeyer either call his home and get a ride from someone in his family or accept a ride from the officer in the patrol car. Rehmeyer refused the first option but accepted the latter. However, before allowing Rehmeyer to enter the patrol car, Perelman advised appellee that he would have to undergo a pat-down search. The officer proceeded to execute a limited pat-down search of Rehmeyer for the purpose of discovering any concealed weapons. Perelman conducted this search to insure that Rehmeyer would pose no danger to the officer during the trip to Rehmeyer's home. During the search, Perelman discovered a .22 caliber pistol. Rehmeyer was then charged with violating the Uniform Firearms Act.[3]

1. This section provides that: "a person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving." 75 Pa.C.S. § 3731(a)(1).

2. Section 3731(c) provides that: "in addition to any other powers of arrest, a police officer is hereby authorized to arrest without a warrant any person who the officer has probable cause to believe has violated the provisions of this section." *Id.*

3. Act of December 6, 1972, P.L. 1482, 18 P.S. § 6101 *et seq.*

The sole issue on appeal is whether the trial court erred in granting the motion to suppress. The decision of the trial court will only be upheld if the record supports the factual findings of the court and the legal conclusions drawn from those findings. *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977); *Commonwealth v. Carter*, 334 Pa.Super. 369, 483 A.2d 495 (1984).

■ In deciding this issue, the dispositive question is whether a police officer who properly proposes to take a citizen home in his patrol car can subject that citizen to a pat-down search for weapons where there is no reason to believe he is armed and the individual is not under arrest though the officer has probable case to arrest. We hold that an officer may conduct a limited pat-down search for weapons in such a situation.

■ "A search is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment." J.W. Hall, *Search and Seizures*, § 10:3 (1982). These intrusions upon an individual's constitutionally guaranteed rights must be based on either a probable cause to arrest or a policeman's reasonable suspicion that the individual with whom he is dealing is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). *Accord Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969).

The trial court held that because Rehmeyer was not placed under arrest, the officer had to be operating under a reasonable belief that appellee was armed and dangerous before conducting the pat-down search. This conclusion is not compelled by *Terry* and we cannot accept it as valid. It is in direct contradiction to the language of *Terry* which provides that "a search for weapons in the *absence of probable cause to arrest* ... must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." *Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882 (emphasis added).

▉ Only in those situations where the officer lacks probable cause to arrest must he reasonably suspect that the individual with whom he is dealing is armed before conducting a legitimate protective search. The *Terry* Court framed the issue as a question of "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons *unless* there is probable cause to arrest." *Terry*, 392 U.S. at 15, 88 S.Ct. at 1877. Clearly, *Terry* supports the proposition that where probable cause to arrest exists, regardless of the officer's decision not to arrest, a search is proper.

*Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), is the seminal Pennsylvania case on the limits of permissible searches. *Hicks* states that "a search and seizure ... is reasonable and legitimate if the police officer has probable cause to arrest." *Hicks, supra,* 434 Pa. at 158, 253 A.2d at 279. Nowhere does *Hicks* qualify or limit the right of an officer to search where he has probable cause to arrest to those situations where the officer effectuates the arrest. For our Court to now so limit or qualify this right would be unreasonable. It would force us to read into *Hicks* and *Terry* a requirement that is patently not present in those cases. The rational behind the *Hicks* decision is to protect citizens from unreasonable searches and seizures in precisely those situations where the officer has no probable cause to arrest nor observes any unusual or suspicious conduct on the part of the individual seized leading the officer to reasonably believe that criminal activity is afoot and that the person with whom he is dealing may be armed and dangerous. *Hicks, supra,* 434 Pa. at 159, 253 A.2d at 279. *Accord Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Neither of these situations is applicable to the case *sub judice*. *Hicks* held that an officer has probable cause to arrest "if at the inception of the seizure he has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that the person seized

has committed, is committing or is about to commit a crime." *Hicks, supra,* 434 Pa. at 158, 253 A.2d at 279.

■ Appellee correctly argues that police officers have no right to search either the automobile or the occupants when a stop is made for an ordinary traffic offense. *Commonwealth v. Dussell,* 439 Pa. 392, 266 A.2d 659 (1970). However, it is obvious Perelman had probable cause to arrest Rehmeyer for drunk driving. Perelman saw appellee run a red light, then, after stopping appellee, the officer noticed the heavy smell of alcohol on Rehmeyer's breath and the difficulty with which Rehmeyer completed the simple task of locating his driver's license. These facts would lead a prudent man to believe that appellee was driving under the influence in contravention of state law. Perelman's resolution not to arrest appellee in no way lessens the probable cause upon which Perelman could have based an arrest. Based on these facts, Perelman's authority to arrest Rehmeyer stemmed not from appellee's failure to stop for a red light but rather Rehmeyer's alleged violation of 75 Pa.C.S. § 3731 (driving under the influence) which gives an investigating officer authority to arrest.

Appellee's reliance on *Commonwealth v. Sams,* 465 Pa. 323, 350 A.2d 788 (1976); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970); *Commonwealth v. Hicks, supra,* is misplaced. In these cases, the Supreme Court concluded that the officers lacked probable cause and could not have reasonably believed the seized individuals were armed and dangerous; therefore, the Court held the searches illegal. The case *sub judice* is easily distinguishable in that Perelman clearly had probable cause to arrest Rehmeyer.

We hold that if probable cause to arrest exists, but the officer does not effectuate the arrest, the officer may nevertheless conduct a protective pat-down search when he decides to transport the individual in the patrol car. *United States v. Ricard,* 563 F.2d 45 (2d Cir.1977). *Accord People v. Otto,* 91 Mich.App. 444, 284 N.W.2d 273 (1979). The Court in *Ricard* held that "the fact that [the officer] had

cause to arrest appellant for speeding, even if he initially determined not to do so, was a sufficient predicate for a full search." *Ricard,* 563 F.2d at 49. *Accord United States v. Jenkins,* 496 F.2d 57, 72–73 (2d Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975). *Jenkins* stated that

> the mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of search ... Any other holding would, without rational basis, exalt form over substance.

*Jenkins,* 496 F.2d at 73.

The officer in this case acted swiftly, justly, and with compassion. Perelman's offer to transport appellee to his home was a truly laudable act. It served "to shiel[d] appellee from criminal punishment and preven[t] harm to innocent parties." *Commonwealth v. Bedsaul,* 298 Pa.Super. 174, 177, 444 A.2d 717, 718 (1982). Such competent and effective police work should be praised and supported by the courts and not discouraged through dissection and reversal.

Determination of whether the pat-down search of appellee was proper necessarily involves the issue of the reasonableness of the search. As the United States Supreme Court so eloquently stated in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), "the touchstone of our analysis under the Fourth Amendment is always 'the *reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security'*." *Mimms,* 434 U.S. at 108, 98 S.Ct. at 332. (Emphasis supplied) (footnotes omitted). The Supreme Court set forth the standard of reasonableness in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The Court stated that reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brignoni-Ponce, supra* at 878, 95 S.Ct. at 2579.

*Accord Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

In the case *sub judice,* we must balance the safety of the officer against Rehmeyer's right to be free from arbitrary searches. The Supreme Court has expressly acknowledged that the officer's safety is a legitimate and weighty justification for the search of a properly detained individual. *See e.g., Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Pennsylvania v. Mimms, supra; Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968); *Terry v. Ohio, supra.*

■ In today's complex society, police are "charged with the protection of constitutional rights, the maintenance of order, the control of pedestrian and vehicular traffic, the mediation of domestic and other non-criminal conflicts, and supplying emergency help and assistance." La Fave, *Street Encounters and the Constitution; Terry, Sibron, Peters and Beyond,* 67 Michigan L.Rev. 40, 61–62 (1968). *Accord Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (police engage in community caretaking functions). If during the execution of these tasks an officer determines that "[a] reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," the officer may conduct a protective pat-down search. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. The officer is empowered to neutralize the danger posed by the party with whom he is dealing. The search must be limited to the accomplishment of the goal which justified its commencement, namely, protection of the officer. The officer's action must be confined to a pat-down search for the discovery of weapons. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ Surely, Officer Perelman's patting-down of appellee fell squarely within the requirements set out above. Though Rehmeyer had not shown any signs of violence, Perelman acted reasonably in assuming that appellee could possibly enter the patrol car with a deadly weapon. Once

behind the wheel of the patrol car, Perelman would be an easy mark. A reasonably prudent man in the same situation would believe that his safety was in jeopardy. "It [is] unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry, supra,* 392 U.S. at 23, 88 S.Ct. at 1881.

In assuming that Rehmeyer may have a concealed weapon, Perelman was not acting on an "inchoate [or] unarticularized suspicion or hunch" but rather on "the specific reasonable inferences which he [was] entitled to draw from the facts in light of his experience." *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883. *Cf. Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *Accord Commonwealth v. O'Neal,* 321 Pa.Super. 323, 468 A.2d 500 (1983).

Although Pennsylvania case law does not address directly the question of whether a police officer is justified in conducting a search in the present situation, *Commonwealth v. Bedsaul,* 298 Pa.Super. 174, 444 A.2d 717 (1982) is quite similar. The defendant, Bedsaul, entered a college women's dormitory without authority, invitation or privilege in an intoxicated condition causing great apprehension among the women living in the dorm. The officers decided not to arrest Bedsaul but instead agreed to drive him to his home. Before allowing Bedsaul to enter the patrol car, the officers patted his outer clothing. The pat-down led to the discovery of a small plastic vial containing pills and a hypodermic syringe.

This Court held that the pills and syringe were not taken from Bedsaul in violation of his Fourth Amendment rights and were therefore admissible. The *Bedsaul* Court considered various factors in holding that the search was permissible: defendant was found in the rear of a woman's dormitory in a stupefied condition, his presence was feared by the young women and defendant had no reason to be in the building. While none of these factors individually would support a search, taken together the court concluded that "[the officer] acted reasonably when assuming that

[Bedsaul] may well have entered the patrol car with a concealed deadly weapon." *Bedsaul, supra*, 298 Pa.Superior Ct. at 177, 444 A.2d at 718.

Other jurisdictions have been confronted with similar case situations. In the case *sub judice*, the trial court echoed the analysis of the California Supreme Court in *People v. Scott*, 16 Cal.3d 242, 128 Cal.Rptr. 39, 546 P.2d 327 (1976). In *Scott*, officers stopped a man and his son as they stood near the entrance ramp to a freeway. Although the man appeared intoxicated, the officers decided not to arrest him. The officers offered to transport the pair to San Francisco but before allowing the father to enter the patrol car, a pat-down search was conducted. The search disclosed a bag of marijuana in his pocket. The Court held that the search was illegal because the officer circumscribed the *Terry* requirement that a pat-down search may only be conducted when the officer reasonably suspects that the individual is armed.

The majority opinion in *Scott* totally ignored the concept of a legitimate frisk based on probable cause to arrest. *See People v. Scott, supra* (Richardson, J., Dissenting Opinion). The Court looked only to whether the officer had reason to believe that Scott was armed and dangerous. The presence of the defendant's young son drastically decreased the possibility of an armed confrontation with police initiated by the defendant. Finally, the search revealed a small bag of marijuana. Such a soft pliable substance could not reasonably be mistaken for a weapon. We find the facts of the present case are distinguishable on these points.

Unlike the trial court, we find the Michigan case of *People v. Otto*, 91 Mich.App. 444, 284 N.W.2d 273 (1979) to be closely aligned with the facts of the case *sub judice*. In *Otto*, the Michigan Court upheld a search by a police officer of a hitchhiker illegally hitchhiking on an interstate highway. The officer decided to transport the hitchhiker to a freeway exit where hitchhiking was not illegal. The officer frisked the hitchhiker before allowing him to enter the patrol car and discovered an automatic pistol inside his jacket pocket.

The Michigan Court concluded that the search was reasonable under the circumstances. The Court relied on *Terry* and *Mimms* in concluding that after "looking at 'all the circumstances of the particular governmental intrusion of [defendant's] personal security' ... the frisk of defendant was reasonable." *Otto, supra* at 449, 284 N.W.2d at 276. (Citations omitted). Justifying this conclusion, the Court stated that "in such a situation it makes sense to remove the danger, and the resulting limited intrusion on the individual's privacy is overcome by the public interest of protecting human life." *Otto, supra* at 453, 284 N.W.2d at 277.

The Supreme Court has specifically recognized the dangers confronting a police officer during the investigation of traffic violations. *Mimms, supra; Terry, supra. See also* Bristori, *Police Officer Shooting—A Tactical Evaluation,* 54 J.Crim. LC & PS 93 (1963). This risk is exacerbated when the officer decides to transport a detained individual in his patrol car. Under the circumstances of the present case—a traffic violation stop which turned into a driving under the influence situation, early morning hours, deserted streets, appellee's visible intoxication and incapacity to drive safely—Perelman reasonably inferred that Rehmeyer was a potential threat to his safety. This is true even though appellee appeared to be cooperative and orderly. Perelman was "not required to gamble his life by placing [appellee] in the patrol car with him without the precaution of a pat-down for weapons." *Carter v. State,* 370 So.2d 1181, 1183 (Fla.Dist.Ct.App.1979).

This important governmental interest must be weighed against the intrusion into Rehmeyer's right to be free from unreasonable searches. We find that Perelman's protective pat-down search of appellee was a minimal intrusion. Perelman had already lawfully detained Rehmeyer and the only question was whether Perelman was going to arrest appellee for drunk driving or transport him home. *Cf., Mimms, supra.* Perelman "confined his search to what was minimally necessary to learn whether [Rehmeyer was] armed and to disarm [him] once he discovered the weapon." What

is at best an extremely limited, short-lived surface search cannot overcome the legitimate and substantial concern for the officer's safety. Such a search constitutes a minimal invasion of appellee's privacy. While transporting appellee home involved the questioned protective search, surely the alternative of arrest would constitute a greater intrusion than the pat-down. The arrest would have entitled Perelman to conduct a full search. The questioned search of appellee was limited in its scope to a pat-down of Rehmeyer's outer clothing to determine if appellee was armed.

While we recognize that such searches may involve a certain level of embarrassment, the courts cannot operate in a vaccuum. The right to be free from unreasonable searches and seizures is a fundamental constitutionally guaranteed right. U.S. Const. Amend. IV. However, police officers must be allowed to neutralize any danger posed by citizens whom the officers have probable cause to arrest and with whom they are in close contact.

The major issue in this case is whether the trial court properly excluded the weapon discovered in Rehmeyer's possession as a result of Perelman's search. Therefore, we must briefly discuss the purpose of the exclusionary rule. *See* Amsterdam, *Perspectives on The Fourth Amendment*, 58 Minn.L.Rev. 349 (1974); Kaplan, *The Limits of the Exclusionary Rule*, 26 Stan.L.Rev. 1027 (1974). "Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct." *Terry v. Ohio, supra,* 392 U.S. at 12, 88 S.Ct. at 1875. *Accord Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The rule must be used by the courts "to guard against police conduct which is overbearing or harassing, or which trenches upon personal security." *Terry* 392 U.S. at 15, 88 S.Ct. at 1876.

Examining the facts of this case, it becomes clear that the rule, as defined, is not applicable. Perelman did not act in an overbearing manner nor was he harassing Rehmeyer. Perelman's conduct was based on his reasonable belief that there was a substantial possibility Rehmeyer possessed

items which could be used to attack Perelman within the confines of the patrol car. In frisking appellee, Perelman was not conducting a "fishing expedition" hoping to discover evidence to be used against Rehmeyer. Perelman feared that appellee could be armed and he confined his search to the level which was necessary to confirm or dispel that fear.

■ We are unable to classify Perelman's conduct as "lawless". Therefore, we cannot hold that the evidence seized as a result of such conduct should be suppressed. The police officer's objective was not the prosecution of a crime but to insure his own safety. Perelman's search was fully justified by the probable cause to arrest for driving under the influence and his reasonable suspicion that appellee could be potentially dangerous.

We find that where an officer has probable cause to arrest but chooses to transport the individual in the officer's patrol car to the individual's chosen destination, the officer may conduct a limited pat-down search for weapons. The justification for this search must be so limited in its scope. The limited intrusion on the individual's right to privacy is outweighed by the government and society's interest in protecting the lives of their police officers.

Reversed and remanded. Jurisdiction is relinquished.