J-A16041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRITTAN L. DAVENPORT | : | |
| | : | |
| Appellant | : | No. 533 WDA 2023 |

Appeal from the PCRA Order Entered April 5, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002543-2020

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: OCTOBER 9, 2024**

Brittan L. Davenport appeals *pro se* from the order dismissing his Post Conviction Relief Act ("PCRA") petition without a hearing. ***See*** 42 Pa.C.S.A. §§ 9541-9546. He raises claims that trial counsel and PCRA counsel were ineffective. We affirm.

A panel of this Court previously summarized the facts as follows:

> Officer Ilija Tubin of the McKeesport Police Department testified that on January 12, 2020, he responded to a report of a male overdose in the area of 2422 Bangkok Street. Officer Tubin testified that he arrived at the scene and spoke with [Davenport's] mother, Kayla Linnon, who had contacted the police regarding her son. Officer Tubin testified that Linnon said her son had smoke[d] K2 marijuana, and that she had found him unconscious on the back porch. [K2 is a synthetic cannabinoid known to cause heart attacks and strokes.] The officer observed [Davenport], face down on the back porch, breathing but not responding to anyone. Medics attended to [Davenport] and he began to regain consciousness. As [Davenport]

started to get up, Officer Tubin observed a heavy bulge in the front pocket of [Davenport's] hooded sweatshirt. The officer testified that he knew immediately it was a firearm. Officer Tubin alerted Lieutenant Alper that [Davenport] had a firearm, at which point Lieutenant Alper did a pat-down for safety and recovered the firearm. [Davenport's] father observed the retrieval of the firearm and stated, "[T]hat's a violation."

Davenport was arrested and charged with, *inter alia*, possession of a firearm prohibited. Prior to trial, Davenport filed a motion to suppress the gun found on his person. On September 8, 2020, the trial court entered an order denying Davenport's motion to suppress. On January 8, 2021, the matter proceeded to a non-jury trial at the conclusion of which the trial court found Davenport guilty of persons not to possess a firearm. The trial court immediately sentenced Davenport to six to twelve years in prison. Davenport did not file a post-sentence motion; however, he did file a timely notice of appeal.

*Commonwealth v. Davenport*, 266 A.3d 707, 708-09 (Pa.Super. 2021) (internal citation omitted).

On direct appeal, this Court found that the officers conducted a lawful pat-down of Davenport and affirmed the trial court's refusal to suppress his gun. *See id.* at 713-14. Accordingly, we affirmed his judgment of sentence. *See id.* at 714. Davenport's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on June 29, 2022.

In September 2022, Davenport filed the instant *pro se* PCRA petition. Counsel was appointed and subsequently filed a no-merit letter and motion to withdraw as counsel. The court issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On April 5, 2023, the court

dismissed the petition and granted counsel's motion to withdraw. Davenport filed a notice of appeal.[1]

On May 12, 2023, the PCRA court ordered Davenport to file a concise statement of errors of on appeal pursuant to Pa.R.A.P. 1925(b), but Davenport failed to do so. The court issued an opinion suggesting that all issues on appeal were waived because of Davenport's failure to file a concise statement. On September 18, 2023, Davenport filed a "Statement of Matters Complained of on Appeal *Nunc Pro Tunc*" alleging that he did not receive the court's May 12, 2023 order and did not know his concise statement was due. The PCRA court requested that the record be remanded for consideration of Davenport's concise statement, and this Court granted the remand. Both Davenport and the trial court have now complied with Pa.R.A.P. 1925.

Davenport raises the following issues:

1. Did the PCRA [c]ourt err in denying PCRA relief without a hearing where [Davenport] presented a claim that trial counsel was ineffective for failing to raise and preserve a challenge to the unlawful seizure of [Davenport] which yielded a firearm, which was used against him, in

_____

[1] Davenport's notice of appeal was docketed on May 8, 2023, more than 30 days after the entry of the order from which the appeal was taken. However, Davenport attached a cash slip to his docketing statement indicating that his notice of appeal was delivered to prison authorities on May 1, 2023, which was within 30 days of the order. "A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence." Pa.R.A.P. 121(f). Thus, Davenport's notice of appeal is deemed timely filed.

> violation of his Constitutional right to be free from an unlawful search and seizure?

> 2. Was PCRA [c]ounsel ineffective for failing to raise the claim that trial counsel was ineffective for inducing [Davenport] to waive his right to a jury trial without a proper consultation on the matter?

Davenport's Br. at 6 (suggested answers omitted).

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Davenport raises claims of counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." **Commonwealth v. Velazquez**, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. **Commonwealth v. Sneed**, 45 A.3d 1096, 1106 (Pa. 2012).

Davenport first claims that trial counsel was ineffective for failing to challenge the unlawful seizure of Davenport which yielded a firearm. Davenport's Br. at 13. Davenport acknowledges that the officers were lawfully at his residence under the community caretaking doctrine because his mother requested emergency assistance since he had ingested K2 and was unconscious. *Id.* at 14. However, he argues that once he regained consciousness and began to stand up and prepare to go with the medics to the hospital, the officers no longer had the authority under the community caretaking doctrine to tend to Davenport because the reason for the officers' presence in the home – seeing to the safety of Davenport – had ended. *Id.* at 15. In Davenport's view, "once medical assistance had been administered, the officers had no authority to conduct a seizure of Davenport without an additional finding of either probable cause or a reasonable suspicion that criminal activity was afoot." *Id.* He therefore maintains that, at that point, there was no reasonable suspicion of criminal activity, and the officers had no authority to seize him or the firearm. *Id.* at 15-16.

Prior to trial, trial counsel moved to suppress the firearm seized as a result of the search, claiming a lack of probable cause or reasonable suspicion. *See* Omnibus Pre-Trial Motion, filed 8/14/20, at ¶¶ 3, 4. The trial court denied the motion. In affirming the order denying the motion to suppress, this Court concluded:

In the instant matter, it is undisputed that the officers were supplying emergency help and assistance to Davenport pursuant to the emergency aid exception. Thus, as in [**Commonwealth v.**] **Rehmeyer**, [502 A.2d 1332 (Pa.Super. 1985)], we employ a "reasonably prudent man" analysis to Lieutenant Alper's decision to pat-down Davenport for weapons.

According to the suppression record, when Officer Tubin responded to the emergency call from Davenport's mother, who reported that she had found Davenport unconscious on her back porch after he had smoked K2 marijuana, Officer Tubin observed that Davenport was breathing but unresponsive. N.T., 9/8/20, at 13-14. Officer Tubin indicated that "[o]nce [Davenport] began kind of coming to a little bit, we had medics there to assist." **Id.** However, when Davenport began to get up, Officer Tubin observed a heavy bulge in the front pocket of Davenport's hooded sweatshirt. **Id.** at 15. According to Officer Tubin, he "immediately knew it was a firearm." **Id.** Officer Tubin alerted Lieutenant Alper that Davenport had a firearm on him, at which point the lieutenant conducted a pat-down for officer safety and located the firearm inside Davenport's pocket. **Id.**

Although the officers were present at Davenport's home to render emergency assistance, this did not preclude the possibility that they might encounter an armed and dangerous individual. Under the circumstances, it was not unreasonable for them to be concerned about their safety when rendering assistance to Davenport. Given that the responding officers were informed that Davenport had overdosed on illegal drugs, they could reasonably have concluded that he might pose a further threat of harm to himself and others, including the officers, Davenport's parents, and the medics who were attending to Davenport and preparing to transport him to the hospital. This inference, combined with the officers' observation of the bulge in Davenport's pocket which Officer Tubin immediately recognized was a gun, amply supported a finding that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." **Rehmeyer**, 502 A.2d at 1336.

> In suspecting that Davenport may have a concealed weapon, the officers were not acting on an "inchoate [or] unarticularized suspicion or hunch" but rather on "the specific reasonable inferences which [they were] entitled to draw from the facts in light of [their] experience." **Id.** (citing **Terry** [**v. Ohio**], 392 U.S. [1,] 27, 88 S.Ct. 1868 [(1968]). Moreover, the officers' objective was not the prosecution of a crime but to ensure safety. **Id.** at 1338. Thus, the officers were authorized to conduct a protective pat-down search of Davenport in order to protect their safety as well as the safety of the other individuals who were present.

**Davenport**, 266 A.3d at 713 (footnote omitted).

Since the record indicates that trial counsel fully litigated the suppression issue, Davenport's claim that trial counsel was ineffective for failing to raise the legality of the search is without merit.

To the extent that Davenport claims that trial counsel was ineffective for failing to challenge the unlawful *seizure of his person*, **see** Davenport's Br. at 13-14, 17-18, it is likewise without merit. Davenport is seemingly referring to a footnote in our prior opinion in which this Court stated:

> Davenport also argues that "an unconstitutional seizure occurred when his freedom of movement was restricted by the officers who prevented him from going to the hospital for treatment." Davenport's Brief at 24. However, Davenport did not raise this issue before the suppression court. In his motion to suppress, Davenport challenged only the search of his person and argued that "[a]t the time of the search, the [o]fficers lacked probable cause to believe that [Davenport] was in possession of illegal items or engaged in criminal activity." Omnibus Pretrial Motion, 8/14/20, at unnumbered 2, ¶ 3. Nor did Davenport claim that he was unlawfully detained at the suppression hearing. **See** N.T., 9/8/20[,] 1-31. Thus, he failed to preserve this issue for our review. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

- 7 -

*Davenport*, 266 A.3d at 710, n.2. He maintains that once he had "recovered from the overdose under the care of responding medical personnel, the officers' authority to remain in his mother's home ceased. As the police had no warrant, and there was no reasonable suspicion of criminal activity, the police officers had no authority to seize Davenport or the gun." Davenport's Br. at 15-16.

This claim lacks arguable merit, and Davenport cannot show prejudice. At the time that Davenport was allegedly seized, the search, which this Court on direct appeal determined was lawful, had already occurred and the firearm had been discovered as a fruit of the lawful search. Thus, this claim fails.

Davenport next argues that PCRA counsel was ineffective for failing to raise the claim that trial counsel was ineffective for inducing Davenport to waive his right to a jury trial.[2] He maintains that he wanted a jury trial, but prior to trial, trial counsel sent Davenport a letter containing a jury waiver form and instructed him on how to answer each question. Davenport's Br. at 20-21 (citing Ex. A). He alleges that he later first learned on the day of trial that the case was proceeding as a stipulated non-jury trial. *Id.* at 21. Davenport asserts that counsel did not explain to him what a stipulated non-jury trial meant or consult with him about it. *Id.* at 22. Davenport states

_____

[2] Davenport raises this claim pursuant to *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (holding that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").

counsel "made it seem like filling out the jury waiver colloquy was just part of the normal court proceedings; that this was something that defendants do in order to get to the next stage." *Id.* at 23. He argues that because counsel "failed to address critical areas about the constitutional rights [Davenport] was giving up, her performance during this consultation should be deemed objectively unreasonable." *Id.* at 24. According to Davenport, he would not have waived his right to a jury but for counsel's improper guidance. *Id.* at 25.

Pursuant to both the federal and Pennsylvania Constitutions, criminal defendants have the right to a jury trial. *See* U.S. Const. amend. VI; Pa. Const. art. I, § 6. However, a defendant may waive the right to a jury trial and proceed to trial before a judge, provided his waiver is knowing, intelligent, and voluntary:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. The defendant must also "be aware of the essential ingredients inherent to a jury trial," which are "1) that the jury be chosen from members of the community (*i.e.*, a jury of one's peers), 2) that the accused be allowed to participate in the selection of the jury panel, and 3) that the

verdict be unanimous." ***Commonwealth v. Houck***, 948 A.2d 780, 787 (Pa. 2008).

For counsel's advice regarding a defendant's jury waiver to be the basis for a successful claim of ineffective assistance of counsel, the defendant must prove that "counsel interfere[d] with his client's freedom to decide to waive a jury trial" and that counsel's specific advice was "so unreasonable as to vitiate the knowing and intelligent waiver of the right." ***Commonwealth v. Mallory***, 941 A.2d 686, 701 (Pa. 2008) (citation omitted). Moreover, to establish prejudice in this context, an appellant "must demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.*, that he would not have waived his right to a jury trial." ***Id.*** at 704. Further, a PCRA petitioner "may not obtain post-conviction relief by claiming that he lied during his waiver colloquy." ***Commonwealth v. Bishop***, 645 A.2d 274, 277 (Pa.Super. 1994).

Here, the record reflects that Davenport was given a thorough on-the-record colloquy as to his right to a trial by jury:

> THE COURT: Do you understand that you are entitled under the Constitution of the Commonwealth of Pennsylvania as well as the United States Constitution to a jury trial on th[e] charge?
>
> [DAVENPORT]: Yes.
>
> THE COURT: Do you understand that if you were to have a jury trial you, along with [your attorney] and the District Attorney . . . would select that jury. The jury would be chosen from your peers; that is, members of the community

of Allegomly County selected randomly from various Court-approved lists?

[DAVENPORT]: Yes.

THE COURT: Do you understand that you would have the right to challenge members of the jury panel. That means that you would have the right to keep certain members of the jury panel from serving as jurors in your case.

[DAVENPORT]: Yes

\*\*\*

THE COURT: Do you understand that all 12 members of the jury so selected would have to find and vote for your guilt before you could be adjudicated guilty. That is, their verdict would have to be unanimous.

[DAVENPORT]: Yes.

THE COURT: Do you understand that in a non-jury trial before a Judge that the Judge sits as the trier of fact and much like the jury is bound by the same Rules of Evidence, but it is the Judge rather than the jury who decides your guilt or your innocence from the evidence presented?

[DAVENPORT]: Yes.

THE COURT: Do you understand that in a jury trial, as in a non-jury trial, you do enter the courtroom clothed in the presumption of innocence, and that presumption remains with you until such time, if ever, that the jury or the Judge should find you guilty?

[DAVENPORT]: Yes.

\*\*\*

THE COURT: You have discussed with [your attorney] your intention to waive your right to a jury trial and proceed before me in a stipulated non-jury, understanding that it would be me who would decide your guilt or innocence from the evidence presented?

[DAVENPORT]: Yes.

THE COURT: Knowing all of this and having discussed your rights with your attorney, it is my understanding that you do wish to voluntarily waive your constitutional right to a jury trial and proceed now before me in a stipulated non-jury. Is that correct?

[DAVENPORT]: Yes.

THE COURT: You do completely understand the proceedings here today?

[DAVENPORT]: Yes.

THE COURT: You're satisfied with the services [your attorney] has provided to you?

[DAVENPORT]: Yes.

THE COURT: Has anybody forced you or attempted to force you to waive your constitutional right to a jury trial proceeding and proceed in a non-jury fashion?

[DAVENPORT]: No.

THE COURT: Has anybody promised you anything in exchange for waiving your constitutional right to a jury trial?

[DAVENPORT]: No.

N.T., 1/8/21, at 7-11.

The trial court next reviewed Davenport's written jury waiver colloquy. *Id.* at 12. Davenport confirmed that he signed the written colloquy and understood its full meaning. *Id.* The court then found that Davenport knowingly, intelligently, and voluntarily waived his right to a jury trial. *Id.* at 14.

The record supports the court's conclusion. Davenport's assertion that trial counsel ineffectively coerced him to waive his right to a jury trial is contradicted by his testimony during his waiver colloquy and by his written

colloquy. The record confirms that Davenport participated in an on-the-record waiver colloquy during which time he confirmed that he understood he had a right to a jury of his peers, he would be permitted to participate in the selection of the jury, and the jury's verdict had to be unanimous. He further stated that he was satisfied with his attorney, he had discussed his rights with his attorney, and no one had made any promises or forced him to waive his right to a jury trial. Davenport is bound by the statements he made during his oral and written colloquies. *See Bishop*, 645 A.2d at 277.

Because the record shows that that Davenport entered a voluntary, knowing, and intelligent jury waiver, his ineffectiveness claim against trial counsel lacks arguable merit and the claim fails. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim"). Since Davenport's underlying argument that trial counsel was ineffective lacks merit, his layered claim regarding PCRA counsel's ineffectiveness for failing to pursue the issue must also fail. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (concluding that if a petitioner cannot prove the underlying claim of trial counsel's ineffectiveness, then petitioner's derivative claim of subsequent counsel's ineffectiveness fails).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/9/2024</u>