**COMMONWEALTH Of Pennsylvania,**
**Appellee**

v.

**Joseph Carl MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2012.

Filed Nov. 7, 2012.

---

Mitchell H. Baylarian, Public Defender, West Chester, for appellant.

Gerald P. Morano, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and ALLEN, J.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Chester County following Appellant's conviction by a jury on the charges of driving while under the influence of alcohol or a controlled substance (DUI), 75 Pa.C.S.A. § 3802(a)(1), careless driving, 75 Pa.C.S.A. § 3714(a), reckless driving, 75 Pa.C.S.A. § 3736(a), accidental damage to unattended vehicle or property, 75 Pa. C.S.A. § 3745(a), and duties at a stop sign, 75 Pa.C.S.A. § 3323(b). Appellant's sole contention is the lower court erred in denying his motion to suppress three beer bottles, which the police seized without a warrant after entering his Chevrolet Blazer. We affirm.

The relevant facts and procedural history are as follows: Appellant was arrested and, on February 25, 2011, he filed a counseled omnibus pre-trial suppression motion. On July 25, 2011, Appellant proceeded to a suppression hearing at which Oxford Borough Police Officer Brian Dever was the sole testifying witness. Specifically, Officer Dever, an eleven-year veteran of the police department, testified that, on March 19, 2010, at approximately 8:24 p.m., he was on routine patrol travelling

southbound on 5th Street when he observed a Chevrolet Blazer make a right-hand turn onto the northbound lane of 5th Street. N.T. 7/25/11 at 18–19. Specifically, he observed the following:

> The vehicle made a wide turn crossing into my lane of travel. The vehicle attempted to adjust and made a hard right turn back into the northbound lane, almost striking a vehicle. Again, correcting that turn, he turned back into my l[a]ne of travel then again turned hard right striking the parked vehicle, ... [which suffered] [m]inor damage to the driver side mirror and door.

N.T. 7/25/11 at 19.

As the Chevrolet Blazer hit the parked vehicle, a piece of the Chevrolet Blazer's side mirror "flew into the air and into [the officer's] lane of travel." N.T. 7/25/11 at 20. Despite the fact the Chevrolet Blazer had just struck a parked vehicle, the Chevrolet Blazer continued driving northbound and, as Officer Dever approached from the opposite direction in his police vehicle, he made eye contact with the driver. N.T. 7/25/11 at 20. Officer Dever made a U-turn, activated his police cruiser's lights, and within half a block, caught up to the Chevrolet Blazer. N.T. 7/25/11 at 20. The Chevrolet Blazer continued travelling northbound on 5th Street and, when the vehicle came to a stop sign at the intersection of Market and 5th Streets, the Chevrolet Blazer went through the stop sign without stopping. N.T. 7/25/11 at 21. In response, Officer Dever activated his cruiser's audible siren; however, the Chevrolet Blazer did not stop. N.T. 7/25/11 at 21–22. Instead, the Chevrolet Blazer turned left onto Railroad Alley, made a left into a driveway located at the rear of 437 and 439 Market Street, which is Section 8 housing, and then came to a stop. N.T. 7/25/11 at 22–23.

As the driver of the Chevrolet Blazer began to exit the vehicle, Officer Dever quickly approached and ordered the driver, who was later identified as Appellant, to remain inside of the vehicle. N.T. 7/25/11 at 22–23. Upon initial contact with Appellant, Officer Dever detected a strong odor of alcohol emanating from Appellant's breath, his eyes were blood shot, and his speech was slow and slurred. N.T. 7/25/11 at 23. As Officer Dever stood by the driver's side door, he was able to view the inside of the Chevrolet Blazer, which was illuminated by surrounding outside lights. N.T. 7/25/11 at 26–27. Sitting in the front console's cup holder, Officer Dever observed in clear view an unopened Heineken beer bottle. N.T. 7/25/11 at 27. Officer Dever testified that, in his experience, Heineken is an alcoholic beverage, and he recognized the bottle as being a Heineken beer bottle based on its green coloring, as well as the cap. N.T. 7/25/11 at 28.

Officer Dever asked Appellant for his license, registration, and insurance card. Appellant provided Officer Dever with a Pennsylvania identification card and valid registration card; however, he did not have in his possession a driver's license or a valid car insurance card. N.T. 7/25/11 at 24. Officer Dever requested that Appellant step out of the Chevrolet Blazer for a field sobriety test and, as Appellant did so, he "staggered, almost fell. He had to lean on the car. [Officer Dever's] partner grabbed a hold of him." N.T. 7/25/11 at 24.

Concluding it was not safe for Appellant to attempt to perform field sobriety tests, and Appellant was under the influence to an extent rendering him incapable of safe driving, Officer Dever placed Appellant under arrest for suspicion of DUI. N.T. 7/25/11 at 25. Officer Dever searched Appellant's person incident to the arrest and discovered a pill bottle, which had labeling

indicating the pills were Oxycodone prescribed for Appellant. N.T. 7/25/11 at 30–31. There were pills inside of the bottle. N.T. 7/25/11 at 31. Officer Dever asked Appellant if he took any of the pills, and Appellant replied that "he took maybe one or two." N.T. 7/25/11 at 31. At this time, Officer Dever and his partner were the only officers on scene, they did not have their guns drawn, and Officer Dever spoke in a normal tone of voice. N.T. 7/25/11 at 31, 34. Officer Dever testified he asked Appellant whether he had taken any of the pills because, since Appellant was then in custody, Officer Dever was concerned about Appellant's health. N.T. 7/25/11 at 35. As Officer Dever explained, having knowledge as to whether Appellant had taken any pills could help medical personnel in saving Appellant's life if needed. N.T. 7/25/11 at 35.

Following the search of his person, Appellant was placed in the rear of Officer Dever's patrol vehicle, and Officer Dever returned to the Chevrolet Blazer. N.T. 7/25/11 at 35. Regarding Officer Dever's actions upon returning to the Chevrolet Blazer, the following relevant exchange occurred on direct examination:

Q: Did you retrieve the bottle of Heineken?

A: Yes.

Q: Can you tell the Judge how you did that?

A: I reached in to remove it.

Q: Did you pick it up?

A: Yes.

Q: When you entered the vehicle to retrieve the Heineken bottle, did you go any further than where you were to grab that bottle?

A: No.

Q: From that point, what did you notice?

A: I observed other Heineken bottles.

Q: Do you recall where they were?

A: I don't recall the exact location, but as I leaned in to retrieve that, I recovered two other bottles. One was empty, and one was three-quarters full and still cold.

Q: I know you don't recall where they were, but can you say for sure that you did not go any further than you needed to retrieve the first bottle?

A: Yes.

Q: How sure are you of that?

A: Because I do that on every traffic stop. I check the area where the driver can reach and under the driver's seat for any contraband.

Q: At this point, you only went as far as in to grab the first Heineken in the console. From that point of view is where you observed the two other bottles?

A: Yes.

Q: They were immediately apparent to be alcoholic beverages? A: Yes.

Q: Did they look like [the] bottle in the console?

A: Yes.

Q: Was [sic] there any differences?

A: One was empty and one was three-quarters of the way full.

A: Did you search or root around in the vehicle in order to observe them or were they in plain sight?

A: Plain sight.

Q: Did you have to manipulate your position when you retrieved the first bottle of Heineken in order to view the other two?

A: Not from where I received the other bottle; no.

N.T. 7/25/11 at 35–37.

On cross-examination, Officer Dever indicated that, after he placed Appellant in

the rear of his patrol vehicle, he administered to Appellant a portable breath test, which revealed the presence of alcohol. N.T. 7/25/11 at 42.

At the conclusion of all evidence, the lower court denied Appellant's pre-trial suppression motion in part,[1] and following a jury trial, Appellant was convicted of the offenses indicated *supra.* On November 16, 2011, the trial court sentenced Appellant to an aggregate of twenty-five months to five years in prison, and Appellant filed a timely post-sentence motion, which the trial court denied. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant's sole contention is the lower court erred in denying his motion to suppress three beer bottles, which the police seized following the stop of his motor vehicle. Specifically, Appellant contends that neither the plain view exception nor the limited automobile exception apply, and therefore, the police should have secured a warrant prior to searching Appellant's vehicle.

■■■ We begin with our standard of review.

The admissibility of evidence is a matter addressed to the sound discretion of the trial court and [ ... ] an appellate court may only reverse upon a showing that the trial court abused its discretion. [W]e consider whether the record supports the suppression court's factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence and only so much of the defense's evidence as remains [uncontradicted] within the context of the record as a whole. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Brown,* 23 A.3d 544, 549 (Pa.Super.2011) (en banc) (quotations and citations omitted).

As indicated *supra,* Appellant has limited his appellate argument to challenge the police entering his Chevrolet Blazer and making a warrantless seizure of the three beer bottles therefrom.[2] Specifically, Appellant contends neither the plain view doctrine nor the limited automobile exception apply.

"[B]oth the Fourth Amendment [of the United States Constitution] and Article I, Section 8 [of the Pennsylvania Constitution] protect individuals against unreasonable searches and seizures, and warrantless searches or seizures are presumptively constitutionally unreasonable, subject to certain established exceptions." *Brown,* 23 A.3d at 552–53. Since Appellant challenges the applicability of the plain view doctrine, which the Commonwealth used to establish the constitutionality of the warrantless seizure of the three beer bottles, we review Appellant's claim under our recent *en banc* Opinions in *Commonwealth v. Brown,* 23 A.3d 544 (Pa.Super.2011) *(en*

---

1. In its Rule 1925(a) opinion, the trial court clarified that it granted Appellant's motion to suppress as it related to Appellant's statements to Officer Dever. The trial court ruled Appellant's statements could be used for impeachment purposes only if Appellant testified at trial. In all other respects, particularly with regard to the seizure of the beer bottles, the trial court denied Appellant's motion to suppress.

2. On appeal, Appellant does not challenge the stop of his vehicle, the police asking him to exit the vehicle, the police arresting him, or the police searching his person incident to his arrest. Therefore, we have confined our analysis to the precise issue presented on appeal.

*banc)*, and *Commonwealth v. Liddie*, 21 A.3d 229 (Pa.Super.2011) *(en banc)*. In *Liddie,* which this Court filed subsequent to *Brown,* we stated, in relevant part, the following:

> [In] *Brown,* [this Court] applied the plain view doctrine to a warrantless seizure of incriminating evidence observed in a vehicle; the decision also carefully analyzed the status of Pennsylvania's limited automobile exception based upon our Supreme Court's plurality decision in *McCree.*[3]
>
> In *Brown,* the defendant argued that his federal and state constitutional rights were violated following a convenience store robbery when police detained him and his minivan and subsequently seized a toy gun and clothing from his vehicle without a warrant. This Court said in *Brown* that the plain view doctrine permitted the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object.
>
> *Brown* focused its analysis on whether the police had lawful access to the contraband because, [in that] case, there was little dispute as to whether the officers viewed the contraband from a lawful vantage point or whether it was immediately apparent that the objects in plain view were incriminating. After describing the history and development of different formulations considered by our Supreme Court for use in determining whether the police had lawful access to seize contraband observed in plain view inside a vehicle, our decision in *Brown* noted that a plurality of the Supreme Court in *McCree* applied Pennsylvania's limited automobile exception in examining whether police properly seized contraband which they recovered from an automobile.
>
> We acknowledged in *Brown* that the plurality's Opinion Announcing the Judgment of the Court ("OAJC") in *McCree* lacked precedential value because it failed to command the joinder of a majority of participating justices. We reasoned, however, that then-Justice (now Chief Justice) Castille's concurring opinion, in which he announced his joinder in the *McCree* plurality's OAJC (except regarding the plurality's discussion of *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978) and the "status and contours" of Pennsylvania's limited automobile exception), "narrowly [imbued] the plurality's OAJC with precedential value regarding automobile searches and seizures in the following limited respect: where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." *Brown,* 23 A.3d at 557. Therefore, because the officers in *Brown* had no advance notice of the defendant's decision to rob the store and since they had no opportunity to obtain a warrant before observing and seizing the challenged contraband in his vehicle, we concluded that the warrantless seizure which occurred there passed constitutional muster.
>
> Applying the three-part test of the plain view doctrine to the facts presently before [this Court in *Liddie* ], we find that the seizure of cocaine from Liddie's vehicle was constitutionally permissible.

*Liddie,* 21 A.3d at 234–235 (citations and footnotes omitted) (footnote added).

---

**3.** *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621 (2007) (plurality).

Applying the law as enunciated by this Court in *Brown* and *Liddie*, we conclude that Officer Dever properly entered Appellant's Chevrolet Blazer and made a warrantless seizure of the three beer bottles in this case.

Specifically, with regard to the first-prong of the plain view doctrine test, whether Officer Dever viewed the initial, unopened beer bottle from a lawful vantage point, we conclude it is unnecessary to analyze this prong since Appellant specifically concedes that this prong has been met. *See* Appellant's Brief at 10.

With regard to the second-prong of the plain view doctrine test, whether the incriminating evidentiary nature of the unopened beer bottle was immediately apparent to Officer Dever, we conclude that this prong was met. "In determining whether the incriminating nature of an object [is] immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause." *Commonwealth v. Turner,* 982 A.2d 90, 92 (Pa.Super.2009). In viewing the totality of the circumstances, the officer's training and experience should be considered. *See Liddie, supra.*

In the case *sub judice,* Officer Dever, who is an eleven-year veteran of the police force, observed Appellant's vehicle strike a parked vehicle and subsequently run a stop sign. Despite the fact the officer followed Appellant's vehicle with his cruiser's lights and sirens activated, Appellant did not stop his vehicle; but rather, he continued to drive until he came to a driveway at the rear of 437 and 439 Market Street. Officer Dever approached the driver's side window of Appellant's vehicle and detected a strong odor of alcohol emanating from Appellant's breath, his eyes were blood shot, and his speech was slow and slurred. Sitting in the front console's cup holder, Officer Dever observed a green bottle. Based on the color of the bottle and the cap, as well as his training and experience, Officer Dever believed the bottle was a bottle of Heineken beer, which is an alcoholic beverage. Officer Dever did not immediately seize the bottle of beer; however, after Appellant staggered and almost fell in exiting his vehicle, Officer Dever concluded Appellant was under the influence of alcohol, and he placed Appellant under arrest. A search of Appellant's person incident to the arrest revealed a valid prescription bottle of Oxycodone pills. At this point, Officer Dever went inside of Appellant's Chevrolet Blazer and seized the unopened bottle of Heineken beer, which Officer Dever had observed previously.

Based on the totality of the circumstances, we conclude the incriminating nature of the Heineken beer bottle was immediately apparent. *See Turner, supra.* We find no merit to Appellant's argument that "[a]n unopened beer bottle is not inherently incriminating in a DUI case." Appellant's Brief at 10. Here, the bottle, which Officer Dever recognized as containing an alcoholic beverage, was found in an area accessible to Appellant (the driver), and in fact, it was sitting in the front drink holder. Whether Appellant had already opened the beer bottle and the cap was just sitting on the bottle or whether Appellant had not yet opened the bottle but apparently intended to do so as it was sitting in a "ready position," the incriminating nature of the bottle was immediately apparent under the totality of the circumstances. *See Turner, supra.*

Finally, with regard to the third-prong of the plain view doctrine test, whether Officer Dever had a lawful right of access to the initial, unopened beer bot-

tle, we conclude Officer Dever had a lawful right of access to the interior of Appellant's Chevrolet Blazer. Under the circumstances described *supra*, Officer Dever's observation of the unopened beer bottle in Appellant's vehicle created probable cause to believe that a crime had been committed, i.e., that Appellant was driving while under the influence of alcohol, and that evidence pertaining to the crime was present in Appellant's vehicle. "Probable cause, in this case, arose suddenly and without any advance warning that [Appellant] or his vehicle would be the target of a police investigation." *Liddie*, 21 A.3d at 236. Therefore, because Officer Dever lacked advance notice and an opportunity to obtain a warrant before commencing a search, Officer Dever lawfully accessed the interior of Appellant's vehicle to recover evidence, i.e., the unopened beer bottle, relating to an ongoing investigation. *See Commonwealth v. Guzman*, 44 A.3d 688 (Pa.Super.2012) (where the defendant parked his vehicle and suddenly jumped out of it, leaving the door open, and the officer viewed drugs in plain view inside, the officer had a lawful right of access to seize the drugs under Pennsylvania's limited automobile exception since the officer did not have advance knowledge that the defendant's vehicle was involved in a crime). Once Officer Dever went into the vehicle to recover the unopened beer bottle, which was in the front console's cup holder, the other two beer bottles, which Officer Dever testified he observed in plain view from his vantage point, were also lawfully removed.[4] *See Liddie, supra* (where the police lawfully accessed the vehicle to remove a bag of marijuana, which was sitting in plain view on top of an open duffel bag, and upon the removal of the bag of marijuana the officer viewed cocaine in the open duffel bag, the police were permitted to lawfully remove the cocaine, which was now in plain view).

Having determined that all three prongs of the plain view doctrine test have been met, we conclude the trial court did not err in denying Appellant's motion to suppress the three beer bottles recovered from his vehicle. Accordingly, we affirm.

Affirmed.

---

4. Appellant does not dispute that the incriminating nature of the empty and three-quarters full bottle of beer was immediately apparent.