J-S48025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BASHEIR FAKHA EDWARDS | |
| Appellant | No. 2183 MDA 2013 |

Appeal from the Order Entered October 25, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000294-2013

BEFORE:  DONOHUE, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:               **FILED SEPTEMBER 18, 2014**

The Commonwealth appeals an order from the Luzerne County Common Pleas Court granting Basheir F. Edwards' ("Edwards") suppression motion. We affirm.

By criminal information filed February 21, 2013, the Commonwealth charged Edwards with possession of a prohibited firearm,[1] carrying a firearm without a license,[2] two counts of receiving stolen property,[3] defiant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 3925(a).

trespass,[4] and driving without a license.[5] On June 27, 2013, Edwards filed a motion to suppress the evidence, including a firearm, alleging the police seized him in his vehicle without probable cause or reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and Article I Section 8 of the Pennsylvania Constitution. ***See*** U.S. Const. Amend. IV; Pa. Const. Art. I § 8; Motion to Suppress, June 17, 2013, ¶¶ 1-5. After a hearing, the suppression court granted his motion. Order Granting Motion to Suppress, 10/25/2013.

In its suppression hearing findings, the trial court aptly set forth the factual history as follows:

### I. INTRODUCTION

Pursuant to an agreement of the parties, the Motion to Suppress relates only to the basis for the vehicle stop on December 12, 2012.

### II. FINDINGS OF FACT

1. On December 12, 2012, Plains Township patrol sergeant Dale Binker was working the 11:00 p.m. to 7:00 a.m. shift.

2. During the early morning hours of December 12, 2012, sergeant Dale Binker was parked in a marked patrol vehicle in a lot near the Jazz Café off of River Street in Plains Township, Luzerne County[,] Pennsylvania.

_____

[4] 18 Pa.C.S. § 3503(b)(1)(ii).

[5] 75 Pa.C.S. § 1501(a).

- 2 -

3. At approximately 1:17 a.m. on December 12, 2012, sergeant Binker observed a yellow vehicle enter the lot and travel on a dirt access road into a wooded area.

4. Sergeant Binker pursued the yellow vehicle, activated his lights and stopped the vehicle on the dirt access road.

5. The dirt access road leads to Canadian Pacific railroad property.

6. **Sergeant Binker testified that he had suspicions regarding the yellow vehicle which is why he activated his lights to bring the vehicle to a stop.**

7. **No testimony was provided as to any specific suspicions with regard to the yellow vehicle.**

8. [Officer] Michael Savokinas testified that he was employed as a Canadian Pacific railway police officer.

9. Officer Savokinas did not know if the portion of the access road on which the yellow vehicle was traveling and eventually stopped was owned by the Canadian Pacific railroad.

10. Sergeant Binker and Officer Savokinas provided credible testimony at the suppression hearing held on October 22, 2013.

Statement in Lieu of Opinion, January 6, 2014 (adopting Findings of Fact and

Conclusions of Law, October 25, 2013) ("Statement"), at 2-3 (page numbers

supplied) (emphasis added). On November 25, 2013, after the trial court granted Edward's motion, the Commonwealth timely appealed.[6]

The Commonwealth presents the following issue for our review:

[I.]   Whether the officer had reasonable suspicion to stop the [Appellant]'s vehicle at 1:17 a.m. traveling on an access road to private property?

Commonwealth's Brief at 4. The Commonwealth argues the suppression court erred by finding that the police officer lacked reasonable suspicion to conduct the stop under the totality of the circumstances. ***See, e.g.,*** Commonwealth's Brief at 8 ("The Commonwealth submits these facts, when viewed in their totality and in the light of Officer Binker's experience, provided him with reasonable suspicion that criminal activity was afoot[]").

When the Commonwealth appeals from a suppression order,

> this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa.Super.2013) (citation omitted).[7] In our review, we are not bound by the suppression court's

_____

[6] The Commonwealth and the suppression court complied with Pa.R.A.P. 1925. **See** Statement at 1 (citing Pa.R.A.P. 1925(a)(1)). An order granting a suppression motion is considered an interlocutory order. Further, the Commonwealth has complied with Pa.R.A.P. 311(d) by certifying that the suppression court "order will terminate or substantially handicap the prosecution." Commonwealth Brief at 1.

[7] Because the trial court granted the suppression motion prior to October 30, 2013, we review the entire record. **Cf. In re L.J.**, 79 A.3d 1073, 1080 (Pa.2013).

conclusions of law, and we must determine if the suppression court properly applied the law to the facts. *Id.* We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony. *Id.* (citing *Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa.Super.2008)).

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa.Super.2014). Further,

[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures. *Commonwealth v. Miller*, 56 A.3d 424, 429 (Pa.Super.2012). Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. *Id.* (citation omitted).

*Id.* In responding to a suppression motion, the Commonwealth has the burden of presenting evidence and establishing, by a preponderance of the evidence, that the police did not obtain the challenged evidence in violation of the defendant's rights. *See* Pa.R.Crim.P. 581(H); *Commonwealth v. Anthony*, 1 A.3d 914, 919 (Pa.Super.2010).

A police officer may initiate an investigatory vehicle stop when he has reasonable suspicion to believe a violation of the Motor Vehicle Code is occurring or has occurred. *Commonwealth v. Bailey*, 947 A.2d 808, 811 (Pa.Super.2008). "Traffic stops based on a reasonable suspicion either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose."

*Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super.2010) (internal citation omitted).

> '[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.' *See* **Commonwealth v. Reppert**, 814 A.2d 1196, 1203 (Pa.Super.2002) (citing **Commonwealth v. Cook**, 558 Pa. 50, 735 A.2d 673, 677 (1999)).

> 'The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a *particularized and objective basis* for suspecting the individual stopped.' **Id**. Therefore, the fundamental inquiry of a reviewing court must be an objective one, 'namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.' **Id**. (quoting **Commonwealth v. Zhahir**, 561 Pa. 545, 751 A.2d 1153, 1156 (2000)).

*Commonwealth v. Anthony*, 1 A.3d 914, 919-20 (Pa.Super.2010) (selected internal quotations omitted).

The suppression court held that when Sergeant Binker activated his lights and pulled Edwards over, he stopped him without reasonable suspicion based on specific, articulable facts that criminal activity was afoot. Statement ¶¶ 8-10, at 3-4. We agree.

Prior to the stop, there was no indication of illegal activity. The vehicle was not speeding. N.T. 10/22/2013, p. 11. There was no reason to suspect

that the vehicle was trespassing on private property, since there were no

"private property" signs posted on the access road. *Id*. at p. 17. Instead, the

officer merely had generalized, unfounded suspicions about the vehicle, as

the following testimony demonstrates:

> **Q [Prosecution]:** And at that point in time [while working on December 12, 2012], what did you do upon seeing that vehicle?
>
> **A [Sergeant Binker]:** At that time, I proceeded to stop the vehicle because that's a common place for – we had numerous stolen cars placed in the woods. We had people illegally dumping, and we also had people back there poaching.
>
> * * *
>
> **Q [Defense counsel]:** When you saw the yellow car, you had no indication [that it was engaged in illegal activity], did you?
>
> **A:** I saw a vehicle pull into the woods which [] was suspicious at that time.
>
> **Q:** That's suspicious to you?
>
> **A:** Yes.
>
> **Q:** So you had a hunch that something's going on?
>
> **A:** It could have been easy to be explained as somebody dumping or could have been a parker, or a girl going back there and they could have gotten raped. That's what the suspicion was. *Don't know what was going on but the car shouldn't be in the woods.*
>
> * * *

N.T. 10/22/2013, pp. 6, 15-16.

Therefore, as Edward's counsel aptly reasoned: "[I]f it's an investigative detention [as opposed to an arrest], you do need reasonable suspicion, which we don't have here. This could be a legal activity. There's no indication of any illegal activity being afoot. And, therefore, it should not raise any reasonable suspicion." N.T. 10/22/2013, pp. 26-27. The suppression court agreed and suppressed all evidence seized as a result of the stop. Statement ¶¶ 8-10, at 3-4. We discern no error of law in the trial court's ruling.

Order affirmed.

Judge Donohue joins in the memorandum.

Judge Platt files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2014