J-S40032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WAYNE SANDERS | : | |
| | : | |
| Appellant | : | No. 1610 EDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008444-2015

BEFORE:   OTT, J., DUBOW, J., and STEVENS[*], P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 21, 2017**

Wayne Sanders appeals from the judgment of sentence entered on May 20, 2016, in the Philadelphia County Court of Common Pleas.  On March 21, 2016, the trial court convicted Sanders of possession of a controlled substance, possession of marijuana, and two counts of violating the Uniform Firearms Act.[1]  The court sentenced Sanders to a term of six to 23 months' incarceration with immediate parole, followed by three years' probation.  On appeal, Sanders argues the trial court erred in denying his motion to suppress physical evidence and his post-arrest written statement.  **See** Sanders' Brief

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  35 P.S. §§ 780-113(a)(16) and (a)(31), and 18 Pa.C.S. §§ 6106(a)(1) and 6108, respectively.

at 4. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the facts the case as follows:

On or about June 3, 2015, Police Officer Jonathan Switaj went to the corner store located at 3154 North Broad Street in Philadelphia at about 5:15 p.m. to do a security check, due to numerous complaints about narcotics sales in the vicinity. When Officer Switaj entered the store, he saw [Sanders] and another black male facing each other, standing by the cash register; the other male had US currency in his right hand, and [Sanders] had a prescription pill bottle in his left hand with different colored pills in it, which the officer could clearly see through the bottom of the bottle. Because the different colored pills were in one bottle, the officer believed he was witnessing a potential drug transaction. The officer asked [Sanders] whether he had "served" (i.e. sold narcotics to) the other male yet, and [Sanders], who appeared surprised that a police officer was in the store, responded that he "didn't serve him yet." The officer asked [Sanders] for the pill bottle, which [Sanders] gave him, and said those were his pills in the bottle, and the name on the bottle was that of [Sanders]. Officer Switaj asked [Sanders] to sit down on some crates while he further investigated the several different types of pills found in the bottle, and [Sanders] appeared to be breathing very heavily and looking back and forth. The officer then asked [Sanders] to stand up and handcuffed him, for the officer's safety, because Officer Switaj was the only police officer in the store, and although he had called for back-up, they had not yet arrived. [Sanders] was not under arrest at that time. Officer Switaj was investigating.

Officer Switaj then took [Sanders] outside to his police car, because he felt that, with numerous people coming in and out of the store, and no other police officers, it was safer to go outside to the patrol car. As he walked [Sanders] to the police car, holding his arm, [Sanders] attempted to yank the officer's arm away so he could run away. The officer told [Sanders] that he wasn't under arrest, but [Sanders] said "I'm scared. I'm scared." At that point, Officer Switaj walks [Sanders] to the police car, at which time police back-up arrives, and Officer Switaj proceeds to conduct an open-hand pat down on [Sanders'] outer layer of clothing. The officer testified that, although [Sanders] was not under arrest at

this time, he did a pat-down for weapons and narcotics, as he does for anyone he places in the back of the police vehicle. While conducting the pat-down, the officer felt a hard object in [Sanders'] front left pocket in the shape of a firearm, which he removed from [Sanders'] pants pocket. After recovering the firearm, [Sanders] was then placed under arrest. The officer continued to do a pat-down of [Sanders], and recovered five small baggies containing a green leafy substance.

After Officer Switaj placed [Sanders] into the back seat of the patrol car, and attempted to buckle him in for safety reasons, [Sanders] started hitting his head on the back of the metal divider, stating "I can't go back to jail, I can't go back to jail", whereupon [Sanders] was transported to the hospital to treat a large gash on the top of his head.

Trial Court Opinion, 7/22/2016, at 1-2 (record citations omitted).

Sanders was charged with possession of a controlled substance, possession of marijuana, firearms not to be carried without a license, and carrying firearms in public in Philadelphia. He filed a motion to suppress on December 23, 2015, alleging the officer lacked probable cause to seize him, and therefore, any evidence recovered or statements made after the improper seizure should be suppressed. A hearing was held on that motion on February 8, 2016. That same day, the court entered an order, denying Sanders' motion. On March 21, 2016, the trial court convicted Sanders of all charges. On May 20, 2016, the court sentenced him to a term of six to 23 months' incarceration for the firearms not to be carried without a license count, followed by three

- 3 -

years' probation for the remaining VUFA violation.[2]  This timely appeal followed.[3]

In his first argument, Sanders contends the "warrantless seizure, and subsequent search, of a pill bottle violated" his constitutional rights.  Sanders' Brief at 10.  Specifically, he states the "plain view" exception to the warrant requirement does not apply to his case because "the incriminating nature of the contents of the pill bottle was not immediately apparent to the police officer" where the officer "did not relate his experience as a police officer to why anything 'struck [him as] odd'" regarding the pill bottle.  *Id.* at 12. (citation omitted).  Moreover, he argues the officer's explanation regarding the contents of the pill bottle, as in seeing different pills in one bottle as opposed to multiple bottles, "provides no objective basis upon which the [t]rial [c]ourt could … gauge why the incriminating nature of the items was immediately apparent to the officer."  *Id.* at 13.

Our standard of review is well-settled:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

_____

[2]  The court did not impose any further penalty on the remaining claims.

[3]  On June 2, 2016, the trial court ordered Sanders to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Sanders filed a concise statement on June 7, 2016.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 22, 2016.

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151–152 (Pa. Super. 2015)

(quotation omitted), *appeal denied*, 138 A.3d 3 (Pa. 2016).

Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (Pa. 2001). The Fourth Amendment and Article I, § 8 have long been interpreted to protect the people from unreasonable government intrusions into their privacy. *United States v. Chadwick*, 433 U.S. 1, 7, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496, 499 (Pa. 1978). "The reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." *Shaw*, at 499 (collecting cases).

*Commonwealth v. McCree*, 924 A.2d 621, 626 (Pa. 2007). There are three types of interactions between citizens and police officers, which require different levels of validation based upon the nature of the interaction.

These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the

- 5 -

functional equivalent of an arrest.  Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Baldwin***, 147 A.3d 1200, 1202-1203 (Pa. Super. 2016)

(citation omitted).[4]

_____

[4]  For purposes of this appeal, which will be discussed in detail *infra*, we note:

"The Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. ***Navarette v. California***, __U.S. __, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014).  It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." ***United States v. Sokolow***, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks and citation omitted). Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as it has standards built into its text, *i.e.*, reasonableness and probable cause.  ***See generally*** U.S. Const. amend. IV.  However, as the Supreme Court has long recognized, ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is an exception to the textual standard of probable cause.  ***Florida v. Royer***, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).  A suppression court is required to "take[ ] into account the totality of the circumstances—the whole picture." ***Navarette***, ***supra*** (internal quotation marks and citation omitted).  When conducting a ***Terry*** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present.  ***Adams v. Williams***, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).  In addition, an officer may conduct a limited search, *i.e.*, a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous.  ***United States v. Place***, 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (citation omitted).

Moreover, we are guided by the following:

> Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. One exception, the plain view doctrine, permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014)

(emphasis added), *appeal denied*, 106 A.3d 724 (Pa. 2014).

> In determining whether the incriminating nature of an object [is] immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. In viewing the totality of the circumstances, the officer's training and experience should be considered.

*Commonwealth v. Miller*, 56 A.3d 424, 430 (Pa. Super. 2012) (citations and

quotation marks omitted).[5]

> Here, the trial court found the following:

> Officer Switaj was lawfully on the premises where he saw the pill bottles in [Sanders'] hand, and the officer's uncontradicted testimony was that he was able to view the pill bottle with different colored pills in the same bottle, engaging with another male who had US currency in his hand, which led the officer to believe he was witnessing a drug transaction. These facts were sufficient to at least allow the officer to have reasonable suspicion to

---

*Commonwealth v. Carter*, 105 A.3d 765, 768-769 (Pa. Super. 2014) (*en banc*) (footnote omitted), *appeal denied*, 105 A.3d 765 (Pa. 2014).

[5] "Immediately apparent" has been defined in plain feel exception cases, which are analogous to plain view exception matters, as that which "the officer readily perceives, without further exploration or searching[.]" *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000).

investigate. There is no testimony that the officer actually opened the pill bottle. Thus, [Sanders'] claim in this regard is without merit.

Trial Court Opinion, 7/22/2016, at 3-4. The testimony of Officer Switaj supports the trial court's conclusion.

With respect to three-part test of the plain view doctrine, we note Sanders only attacks the second prong in his argument, that is, whether it was immediately apparent to the officer that the object is incriminating. **See** Sanders' Brief at 11-13. Accordingly, we will confine our analysis to that prong. We find the incriminating nature of the bottle of pills was immediately apparent to the officer based on the totality of the circumstances. As noted above, "[a]n officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. In viewing the totality of the circumstances, the officer's training and experience should be considered." **Miller**, 56 A.3d at 430. Here, the officer testified that he was in a high crime area, and that narcotics sales regularly occurred inside and outside the store. Specifically, with respect to the case at hand, he observed an unidentified male holding cash and Sanders with a pill bottle in his hand. It was obvious to Officer Switaj that there were different kinds of pills in the bottle, and the officer testified that this seemed unusual to him, explaining that it is generally one set of pills in a bottle and then another kind in a separate container, not all mixed together. Based on his experience, the officer indicated he believed a potential transaction was

transpiring. Moreover, when Officer Switaj asked Sanders if he had "served" or sold drugs to the unidentified male, Sanders replied that he did not "serve" the man "yet." N.T., 2/8/2016, at 13.

The totality of the circumstances, including the officer's observations and Sanders' statement, established the second prong of the plain view doctrine, that it was immediately apparent to Officer Switaj that based on probable cause, the bottle was incriminating. Furthermore, as for Sanders' argument regarding Officer Switaj's experience and training, we note he is focusing on evidence the Commonwealth did not explicitly present, rather than the evidence the Commonwealth did, indeed, set forth. It merits mention that Sanders cites no law for the suggestion that an officer must observe a certain number of transactions before he can conclude that a pill bottle containing numerous kinds of pills is apparently incriminating. Likewise, our own review has failed to reveal any such case law. Accordingly, we discern no abuse of discretion on the part of the trial court in finding Officer Switaj's testimony credible. Therefore, the seizure of the pill bottle was proper pursuant to the plain view doctrine.

Separately, we note that based on the totality of the circumstances as set forth above, Officer Switaj conducted a legal investigatory detention of Sanders that was supported by reasonable suspicion. He observed what he believed to be a drug transaction taking place and that Sanders was involved in the illicit sale. Therefore, he was justified in asking Sanders about the

bottle, after which Sanders voluntarily consented to giving him the container. *See* N.T., 2/8/2016, at 14.

Next, Sanders argues Officer Switaj did not possess reasonable suspicion or probable cause to justify the pat-down or frisk of his person. Sanders' Brief at 14. Specifically, he states the officer "did not point to specific facts, which led him to reasonably infer that Wayne Sanders was armed and dangerous." *Id.* Sanders alleges the following:

> The police officer's patdown of Wayne Sanders was not justified. The officer did not articulate specific facts, which might suggest that Wayne Sanders was armed and dangerous. [Sanders] did not attempt to grab the officer's gun. The officer did not observe a bulge or object in the shape of a gun in [Sanders'] clothing. Rather, Officer Switaj explained, "Anybody who sits in the back of my patrol vehicle, under arrest, I'm taking them to the bus stop, I pat him down for my safety because they are sitting behind me…" This general statement was [an] insufficient justification for the patdown.
>
> …
>
> First, it was not necessary for the officer to place [Sanders] in the patrol car, because, as Officer Switaj walked [Sanders] to the car, "Another officer arrives on the scene." Thus, the reason for placing Wayne Sanders into the patrol car – the fact that Officer Switaj was alone – was no longer an issue. Accordingly, because there was no longer a need to place [Sanders] into the car, there was no reason for the officer to conduct a patdown. Next, at the time of the patdown, there was no reason for Officer Switaj to think that Wayne Sanders would be sitting behind him. When the officer patted [Sanders] down, he did not intend to transport [Sanders] to another location. Also, Wayne Sanders was not under arrest. Therefore, [Sanders] would not be sitting behind Officer Switaj.

*Id.* at 18-19 (citations and record citations omitted).

Keeping in mind our standard of review and case law regarding search and seizure as provided above, we are guided by the following regarding frisks:

> An overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

**Commonwealth v. Mack**, 953 A.2d 587, 591 (Pa. Super. 2008) (citations omitted). We also note the following: "[T]he mere fact that the trooper reversed the procedure, *conducting the search before the arrest*, did not render it illegal as long as probable cause to arrest existed at the time of search .... Any other holding would, without rational basis, exalt form over substance." **Commonwealth v. Rehmeyer**, 502 A.2d 1332, 1335 (Pa. Super. 1985), *appeal denied*, 531 A.2d 780 (Pa. 1987), *quoting* **United States v. Jenkins**, 496 F.2d 57, 73 (2d Cir.1974), *cert. denied*, 420 U.S. 925 (1975) (emphasis in original). **See also Commonwealth v. Merriwether**, 555 A.2d 906 (Pa. Super. 1989); **Commonwealth v. Canning**, 587 A.2d 330 (Pa. Super. 1991).

Turning to the present matter, the trial court found the following:

> Here, Officer Switaj was investigating complaints of drug trafficking at a specific location, and upon his arrival, observed what he believed to be a drug transaction between [Sanders] and another person, and proceeded to investigate. [Sanders'] actions during that investigation - heavy breathing and looking back and forth in a way that aroused the officer's suspicion -- led to his

being handcuffed, for the safety of the officer and the others in the store.

The issue of whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's action in light of the facts and circumstance confronting him at the time, and not the officer's actual state of mind at the time the challenged action was taken; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Commonwealth v. Garza, 2016 WL 212493 (Pa. Super. 2016). The sole justification of a *Terry* search is the protection of the police and others nearby, and such protective search must be strictly limited to that which is necessary for discovery of weapons which might be used to harm the officer or others nearby, and the purpose of the search is therefore to allow the police officer to pursue his investigation without fear of violence. Commonwealth v. Guillespie, 745 A.2d 654 (Pa. Super. 2000).

Here, based upon [Sanders'] actions of suspected drug dealing, acting nervous and attempting to escape, the officer had reasonable suspicion to investigate further and was justified in handcuffing [Sanders] and subsequently placing him in the police car, for officer safety. Upon that investigation, and prior to placing him in the police car, he patted him down for officer safety and discovered the firearm, and subsequently, other contraband. Such a pat-down is permissible for officer safety. See, Commonwealth v. Rehmeyer, 349 Pa.Super. 176, 502 A.2d 1332 (1985), *alloc. denied*, 516 Pa. 613, 531 A.2d 780 (1987) (Police officer who properly proposed to take a citizen home in his patrol car could subject that citizen to a pat-down search for weapons, even where there is no reason to believe that the citizen is armed, and the individual is not under arrest, although the officer has probable cause to arrest). If the officer determines that a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger, the officer may conduct a protective pat-down. Commonwealth v. Rehmeyer, id., citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), 392 U.S. at 27, 88 S.Ct. at 1883. The officer is empowered to neutralize the danger posed by the party with whom he is dealing, and a reasonably prudent man would believe that his safety was in jeopardy if, once behind the wheel of the police car, [Sanders] could possibly enter the patrol car with a deadly weapon. Commonwealth v. Rehmeyer, 349 Pa.Super, at

- 12 -

> pp. 183-184. Accord, Commonwealth v. Merriwether, 382 Pa.Super. 411, 555 A.2d 906 (1989) (Police could conduct a protective pat-down search of defendant, whom they had probable cause to arrest for a narcotics violation, and weapon seized as a result of that search was admissible in prosecution for violation of Uniform Firearms Act); Commonwealth v. Romero-Diaz, 2014 WL 10788783 (Pa. Super.) (For their own safety, the Troopers were entitled to perform a limited frisk for weapons before securing Romero-Diaz and his passenger in their vehicle for transport. Thus, the Troopers had lawful access to pursue a plain feel pat down of Romero-Diaz, at which point Trooper Hope felt a "bulge" that was revealed to be his keys. The Troopers' search ended at that point, and was "strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.)

Trial Court Opinion, 7/22/2016, at 4-6.

We agree with the trial court based on the totality of the circumstances and in light of **Mack**, *supra*, and **Rehmeyer**, *supra*. After Officer Switaj detained Sanders and asked him to sit down while he called for backup, the officer noticed that Sanders was breathing very heavily and was looking back and forth. N.T., 2/8/2016, at 15-16. The officer indicated Sanders had attempted to flee at one point. **Id.** at 18. Officer Switaj then stated he was walking Sanders over to his patrol car and had opened the door when his backup showed up. **Id.** Officer Switaj conducted an open hand pat-down of Sanders' person. **Id.** at 19-20. The officer testified he patted Sanders down "[b]ecause [he] was going to place him inside the back of his vehicle." **Id.** at 19. On cross-examination, he also gave the following reason: "Anybody who sits in the back of my patrol vehicle under arrest, I'm taking them to the bus

- 13 -

stop, I pat[ted] him down for my safety because they're sitting behind me, cuffed or not cuffed." *Id.* at 32.

We emphasize that there were patrons inside and outside of the store, Officer Switaj had just observed what he believed was a drug transaction in process, Sanders was acting in a nervous manner, and he had attempted to flee.[6] The fact that the backup officer had arrived while Officer Switaj was in the midst of his investigative procedure, specifically while he was placing Sanders in the police car, does not render his subsequent actions illegal.[7] Moreover, in accordance with **Rehmeyer**, **supra**, because Officer Switaj possessed probable cause as determined in the first issue, he could properly pat-down Sanders, even though he was not contemporaneously effectuating an arrest. Accordingly, Sanders' second argument fails.

Lastly, Sanders argues that his statement was the "fruit of the poisonous tree" and therefore, the trial court erred in failing to suppress it. Sanders' Brief at 19-20. A review of the record reveals that Sanders did not include this issue in his concise statement. **See** Sanders' Statement of Matter Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 6/7/2016. It is well-

---

[6] **See Commonwealth v. Legg**, 392 A.2d 801, 803 (Pa. Super. 1978) (finding flight alone not sufficient, but flight coupled with additional facts pointing to defendant's guilt may establish probable cause).

[7] We may have reached a different conclusion if the backup officer had arrived when Officer Switaj was in the store with Sanders or at the moment he had brought Sanders out of the store.

- 14 -

settled that such a failure results in waiver. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Accordingly, we need not address Sanders' final argument further.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: 11/21/2017